[L. A. No. 1642. In Bank.—February 11, 1905.]

### D. S. REYNOLDS, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY, and LOS ANGELES RAILWAY COMPANY, Appellants.

STREET RAILROADS—ASSIGNABLE FRANCHISE—TRANSFERS TO INTERSECTING LINES OPERATED BY SAME HOLDER—SEVERANCE OF GRANT—MANDAMUS.—A provision in the grant of an assignable franchise, requiring the holder and assignor to give and receive transfers to and from such other intersecting lines of street-cars as he may operate, does not require such transfers to be given or received where a company holder previously operating intersecting lines has made a separate transfer of such assignable franchise to an independent company which operates no intersecting lines, and *mandamus* will not lie in such case to compel an interchange of transfers between the independent companies.

ID.—BURDENS NOT REMAINING UPON GRANTOR OF FRANCHISE.—Though it is a well-settled rule that a transfer of an assignable franchise carries with it and imposes upon the grantee or assignee all the duties or obligations which rested upon the original holder, yet no burdens thereof remain upon an intermediate assignee or grantee while all the privileges and benefits of the franchise have been passed on to others.

APPEAL from a judgment of the Superior Court of Los Angeles County.    N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Bicknell, Gibson, Trask, Dunn & Crutcher, for Appellants.

*Mandamus* will not lie to compel transfers of tickets by corporations representing the public.    (*People* v. *Keating,*

168 N. Y. 390; *People* v. *Brooklyn etc. Ry. Co.*, 172 N. Y. 90; *People* v. *Interurban St. Ry. Co.*, 85 App. Div. 407; 177 N. Y. 296; *State* v. *Mobile etc. Ry. Co.*, 59 Ala. 321.) A grantor of an assignable franchise is relieved from all burdens thereof. (*Carr* v. *Lowrey's Admrs.*, 27 Pa. St. 257.)

Emmet H. Wilson, and W. B. Mathews, for Respondent.

*Mandamus* will lie to compel transfers. (*Richmond Ry. and El. Co.* v. *Brown*, 97 Va. 26.) The Los Angeles Railway Company was not absolved from its duty to give transfers by its grant to the Pacific Railway Company, and neither of them was freed from the duty to give transfers. A corporation is not permitted by its own act to disable itself from performing its duties to the public which were the consideration for the grant. (*State* v. *Hartford etc. R. R. Co.*, 29 Conn. 538; *Gates* v. *Boston etc. R. R. Co.*, 53 Conn. 343; *Railroad Comrs.* v. *Portland and O. C. R. R. Co.*, 63 Me. 278;[1] *Attorney-General* v. *West Wisconsin Ry. Co.*, 36 Wis. 466; *People* v. *Albany etc. R. R. Co.*, 24 N. Y. 261;[2] *Potwin Place* v. *Topeka Ry. Co.*, 51 Kan. 609;[3] *Thomas* v. *West Jersey R. R. Co.*, 101 U. S. 71; *Rex* v. *Severn etc. Ry. Co.*, 2 Barn. & Ald. 646.)

HENSHAW, J.— This action was in mandate to compel the defendants to interchange transfers upon their respective lines of street railways intersecting East Ninth Street in the city of Los Angeles.

Eliminating from consideration the question of the right of the petitioner to seek relief in mandate, the following are the undisputed facts presented: In 1897 the city of Los Angeles granted to one Kays and his assigns a franchise for the construction and operation of an electric street railway over and along certain streets in the city of Los Angeles, and in particular over a portion of Ninth Street between Santa Fe Avenue and Spring Street. Many conditions and burdens went with the franchise—paving and macadamizing the roadway between the tracks and for two feet on each side, establishing and maintaining grades, flumes, and culverts, furnishing transportation to school-children at half-fare, carrying policemen, firemen, and city officials free of charge, and (we here quote section 6 of the ordinance) :—

[1] 18 Am. Rep. 208.    [3] 37 Am. St. Rep. 312, and note.
[2] 82 Am. Dec. 295.

"Sec. 6.  Provided, further, that said grantee and his assigns will issue to and receive from the present line of street railway located on Mateo Street and Santa Fe Avenue, and all other lines of street railways in said city operated by said grantee or his assigns, transfers good for continuous single trips thereon in said city."

Thereafter the defendant the Los Angeles Railway Company acquired the Ninth-Street franchise by assignment, and until January, 1904, the Los Angeles Railway Company operated a street railway upon Ninth Street.  It likewise operated other lines of street railway, and during all of the time it owned the Ninth-Street franchise it issued transfers from the Ninth-Street line to its other lines, and, conversely, transfers from its other lines to the Ninth-Street line.  The Los Angeles Railway Company, in turn, duly sold, assigned, and transferred to the Pacific Electric Railway Company the franchise upon East Ninth Street, and the latter company has ever since been the owner and holder of this franchise.  In January, 1904, the Los Angeles Railway Company ceased to operate any cars upon Ninth Street, and "since said date has not had and does not now have any right, power, or authority to operate any car or cars over that portion of East Ninth Street referred to in said petition, or any part thereof, and since said first day of January, 1904, has not had and does not now have any power or authority to issue transfers to passengers entitling them to ride upon the Pacific Electric Railway Company's cars on said East Ninth Street, except under and by virtue of the terms of the franchise, and in particular by virtue of the terms of section 6 thereof."  "The operation of the cars and car-lines of the said Los Angeles Railway Company is not nominal only, and the said cars and car-lines alleged in the said amended petition to be operated by the said Los Angeles Railway Company are not operated and controlled by the said Pacific Electric Railway Company, but are actually operated and controlled by the said Los Angeles Railway Company."  The quotations are from the findings.  The Pacific Electric Railway Company has never issued transfers to passengers entitling them to ride upon the cars of the Los Angeles Railway Company, nor has the Los Angeles Railway Company ever issued transfers from its cars entitling passengers to ride upon the cars of

the Pacific Electric Railway Company running upon East Ninth Street.

The court concluded that by force of the provisions of section 6 of the ordinance above quoted, it became the duty of the defendant companies to interchange transfers, and issued its mandate accordingly.

The plain and obvious meaning of section 6 is, that the person or corporation owning and enjoying the franchise to operate cars upon East Ninth Street shall be bound to the performance of certain obligations by reason of that ownership and enjoyment, and amongst these obligations is the one that he shall give and receive transfers to the Ninth-Street line, and from the Ninth-Street line from and to such other connecting lines of street-cars as he may operate. It is a well-settled rule that a grant, assignment, lease, or transfer of a franchise such as this carries with it and imposes upon the grantee or assignee all the duties and obligations which rested upon the original holder of the franchise. It is the simple proposition that he who enjoys the privileges shall suffer the burdens. But the construction which is sought by the respondent to be placed upon this franchise would impose upon every intermediate assignee or grantee these burdens, while all the privileges and benefits had been passed on to others. Respondent cites us to numerous cases laying down the well-settled rule to which we have adverted, that a transfer of a franchise carries its liabilities and duties as well as its privileges; but the industry of his counsel and our own independent investigation has failed to bring to light one case where it is held that the liabilities and burdens remain when the full enjoyment of the franchise and its privileges have been legally passed on to another. Cases will be found where the owner of a franchise has not been allowed to discontinue the operation of a part of the railroad for which a franchise was granted. *Per contra,* cases will be found holding that the remedy in such a case is not to compel the operation of the abandoned portion of the railroad, but lies in an action for forfeiture of franchise. But no case, as we have said, has been pointed out or has been discovered where, under an assignable franchise such as this all rights have been parted with and all obligations yet remain. In reason and in justice as well could respondent insist that it is the duty of the Los Angeles

Railway Company to perform all of the other burdens imposed upon the owner of the Ninth-Street franchise—the grading and repair of streets, the construction of culverts, and the like, as to insist that this particular burden shall remain.

There is no ambiguity in section 6 calling for construction. The language is clear and unmistakable that Kays, the grantee of the franchise, and whoever else may hold it by assignment, shall fulfill the obligations in consideration of the benefits. While the Los Angeles Railway Company was the assignee of Kays, it admittedly fulfilled all obligations. When it transferred the franchise by valid legal sale, as the court finds, to the Pacific Electric Railway Company, the Los Angeles Railway Company ceased to be the assignee of the franchise, and the Pacific Electric Railway Company then became the assignee.

It is found that the two corporations defendant are independent, and no right existed to compel an interchange of transfers between them.

The judgment appealed from is therefore reversed.

McFarland, J., Lorigan, J., Beatty, C. J., Angellotti, J., and Van Dyke, J., concurred.

SHAW, J., concurring.—I concur. In order to maintain the contention of the respondent it would be necessary to hold that when the franchise granted to Kays was assigned to the Los Angeles Railway Company the effect was, that thereupon there became affixed to the franchises of all the connecting lines then operated and owned by the Los Angeles Railway Company a new condition or covenant running with the property, and binding upon all subsequent assignees of such connecting lines, whereby the persons operating them would be obliged to give and receive transfers to and from the Kays line. The new condition would be a qualification or limitation upon the estate of the Los Angeles Railway Company in its connecting lines, and of every subsequent holder thereof. It would be attached to the estate, and be thereafter inseparable from it. The language of the sixth clause quoted in the main opinion will not bear this construction. It does not require that the person operating the connecting lines shall have any estate therein, but merely that he be operating

the same. It manifestly imports a mere personal covenant to be temporary to the extent that it shall be obligatory only while the respective lines are operated by the same person or corporation, and to cease as soon as the joint operation ceases.

It should be added that there is nothing in the case requiring a decision on the question whether or not the person operating the Ninth-Street line is still obliged to give and receive transfers to and from the Mateo-Street and Santa Fe-Avenue line which is mentioned in the sixth clause, nor whether or not a like burden rests upon the holder of the last-named line, although it may be held by a person or corporation not operating the Ninth-Street part of the line.